## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| LARRY L. CASEY, | : | Case No. 1:23-cv-210 |
| | : | |
| Petitioner, | : | |
| | : | |
| vs. | : | District Judge Michael R. Barrett |
| | : | Magistrate Judge Kimberly A. Jolson |
| | : | |
| WARDEN, CHILLICOTHE | : | |
| CORRECTIONAL INSTITUTION, | : | |
| | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

Petitioner Larry L. Casey, an inmate in state custody at the Chillicothe Correctional Institution, has filed, without the assistance of counsel, a petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Petitioner challenges his conviction and sentence from Clinton County Court of Common Pleas Case No. CRI 2015-5239, finding Petitioner guilty of rape and unlawful sexual conduct with a minor and sentencing him to an indefinite term of imprisonment for 25 years to life. (*Id.* at PageID 1). This matter is before the Court on the Petition (Doc. 1), Respondent's Return of Writ (Doc. 7), Petitioner's Traverse (Doc. 8), the state court record (Doc. 6), and trial transcripts (Doc. 13-1). The Undersigned **RECOMMENDS** that this action be **DISMISSED with prejudice** as his single ground for relief is procedurally defaulted and is also not cognizable on federal habeas review.

## I. FACTS AND PROCEDURAL HISTORY

The Court first considers the factual background and procedural history giving rise to Casey's petition.

1

A.     **Trial**

On June 22, 2015, the Clinton County grand jury charged Petitioner with five counts of rape in violation of Ohio Revised Code § 2907.02(A)(1)(b) (Counts 1, 5, 6, 8, and 10) and five counts of sexual battery in violation of Ohio Revised Code § 2907.03(A)(5) (Counts 2, 3, 7, 9, and 11), all with accompanying sexually violent predator specifications under Ohio Revised Code § 2941.148(A); and one count of unlawful sexual conduct with a minor in violation of Ohio Revised Code § 2907.04(A) (Count 4). (Doc. 6 at Ex. 1, PageID 27–31). Petitioner pleaded not guilty to all counts. (*Id.* at Ex. 2, PageID 33–34). The charges under this criminal case were consolidated into one trial with another criminal case against Petitioner.[1] (*Id.* at Ex. 4, PageID 36–38). Petitioner waived his right to a jury trial as to the specifications, leaving it to the state trial judge to determine guilt for any sexually violent predator specifications. (*Id.* at Ex. 3, PageID 35).

On January 5, 2016, a jury trial commenced. (Doc. 6 at Ex. 5, PageID 39). The State elected to dismiss Counts 1, 2, and 5 after resting its case. (*Id.*; Doc. 13-1, PageID 995). The jury convicted Petitioner on Counts 3, 4, 10, and 11 but acquitted him on the remaining Counts.[2] (Doc. 6 at Ex. 5, PageID 40; Doc. 13-1, PageID 1227–31). On January 21, 2016, the trial court found Petitioner guilty of the sexually violent predator specification under Count 10. (Doc. 6 at Ex. 6, PageID 42–44; Doc.13-1, PageID 1273–76). That same day, the trial court held a sentencing hearing. (*Id.* at Ex. 7, PageID 45–48; Doc. 13-1, PageID 1283–89). For sentencing purposes, the trial court merged Counts 3 and 4, and merged Counts 10 and 11. (Doc. 6 at Ex. 7, PageID 47; Doc. 13-1, PageID 1286–87). The trial court then sentenced Petitioner to a mandatory indefinite

---

[1] The other case, CRI 2015-5087, was for failing to provide notice of a change in address (Doc. 6 at Ex. 4, PageID 37), which Petitioner does not appear to challenge here (*see generally* Petition, Doc. 1; Traverse, Doc. 8).

[2] Petitioner was also found guilty on the sole count for failure to provide notice of change of address from the consolidated case. (Doc. 6 at Ex. 5, PageID 40).

term of imprisonment for 25 years to life on Count 10 and to a definite term of imprisonment for 7 years on Count 4 to be served concurrently. (Doc. 6 at Ex. 7, PageID 47; Doc. 13-1, PageID 1287–88).

### B. Direct Appeal

On October 24, 2016, Petitioner appealed his convictions to the Twelfth District Court of Appeals in Clinton County, Ohio, raising the following two assignments of error:

1. Appellant's convictions must be reversed as Appellant was denied his constitutional right to effective assistance of counsel; and

2. Numerous harmless errors combined to constitute cumulative error such that Appellant's convictions must be reversed.

(Doc. 6 at Ex. 9, PageID 50–59). Petitioner maintained that his trial counsel performed deficiently by allowing prejudicial testimony to be heard at trial. (*Id.* at PageID 55–57). The State submitted a responsive brief, (*id.* at Ex. 10, PageID 73–85), and Petitioner replied (*id.* at Ex. 11, PageID 86–91).

The Twelfth District Court of Appeals summarized the facts underlying Petitioner's convictions as follows:

{¶ 2} On March 25, 2015, the Clinton County Grandy Jury returned an indictment charging Casey with failing to notify of his change of address as a Tier III sex offender. Thereafter, on June 22, 2015, the Clinton County Grand Jury returned another indictment charging Casey with five counts of sexual battery, five counts of rape, and one count of unlawful sexual conduct with a minor. With the exception of the one count alleging unlawful sexual conduct with a minor, all of the charges included a sexually violent predator specification. According to the bill of particulars, these charges stemmed from allegations Casey engaged in various sex acts with N.J., both before and after she turned 13 years old.

{¶ 3} The matter ultimately proceeded to a four-day jury trial that concluded on January 8, 2016. At trial, N.J., who was then 15 years old, testified to several instances where Casey had sexual intercourse with her both before and after she turned 13. According to N.J.'s testimony, these incidents occurred multiple times between 2009 and 2014 while she was living with Casey in both Warren County and Clinton County. Casey denied ever engaging in any sex acts with N.J. Rather,

3

Casey claimed N.J. was lying and that the allegations were all part of a grand conspiracy between N.J. and her father.

{¶ 4} After both parties rested, the jury returned a verdict finding Casey guilty of two counts of sexual battery, one count of rape, and for having unlawful sexual conduct with a minor. The jury also found Casey guilty of failing to provide notice of his change of address. After the jury reached its verdict, the trial court held a hearing wherein it classified Casey as a sexually violent predator and sentenced him to serve a mandatory indefinite term of 25 years to life in prison.

(Doc. 6 at Ex. 12, PageID 93–94 (footnote omitted)).

On March 9, 2017, the state appellate court overruled both assignments of error and affirmed the judgment of the state trial court. (*Id.* at Ex. 12, PageID 92–99). From review of the record, it appears that Petitioner did not appeal this decision to the Ohio Supreme Court. (*See id.* at Ex. 16, PageID 132 (reviewing the procedural history, the state trial court noted the same in Petitioner's post-conviction action)).

**C.      Rule 26(B) Application for Reopening**

On June 19, 2017, Petitioner, without the assistance of counsel, filed an untimely Rule 26(B) application for reopening in the state appellate court. (Doc. 6 at Ex. 22, PageID 217–27). At the time of filing his application, Petitioner's state post-conviction action was pending with the state trial court. (*Id.* at Ex. 13, PageID 100–12). In his application, Petitioner raised an ineffective-assistance-of-appellant-counsel claim for failing to raise the following claims on direct appeal:

1. Trial counsel offered ineffective assistance of counsel in violation of the Sixth Amendment of the Constitution of the United States and violated defendant's Fourteenth Amendment guarantee of due process on multiple occasions;

2. Defendant's Fourteenth Amendment right to due process was violated when plain error in accordance to Criminal Rule 52(B) was allowed unchallenged by the trial judge and trial counsel;

3. Defendant's Due Process rights under the Fourteenth Amendment and Sixth Amendment rights to a fair trial were violated due to prosecutor misconduct on many occasions which prejudiced defendant and biased the jury against defendant;

4

4. Defendant's Sixth and Fourteenth Amendment rights to a fair jury trial which follows due process were violated when he was convicted on four charges which were not supported any evidence, sufficient or otherwise;

5. Defendant's Sixth and Fourteenth Amendment rights to a fair jury trial which follows due process were violated when he was convicted on four charges which were against the manifest weight of the evidence; and

6. Defendant's Sixth and Fourteenth Amendment rights to a fair jury trial which follows due process were violated when his two separate cases were improperly joined for trial in a single trial.

(*Id.* at Ex. 22, PageID 220–26). With his application, Petitioner submitted his own affidavit, pointing to the trial transcript as support for his claims. (*Id.* at PageID 228–41 (quoting Doc. 13-1 (Trial Transcripts))). The State opposed the application. (*Id.* at Ex. 23, PageID 242–52).

On August 9, 2017, the state appellate court denied the untimely application because Petitioner failed to show good cause for the late filing. (Doc. 6 at Ex. 24, PageID 253–54). From review of the record, it does not appear that Petitioner appealed this decision to the Ohio Supreme Court.

### D.     State Post Conviction

Petitioner, with the assistance of counsel, filed a post-conviction petition with the state trial court on April 3, 2017. (Doc. 6 at Ex. 13, PageID 100–12). Petitioner raised the following two grounds for relief:

(1) Petitioner was denied his constitutional right to effective assistance of counsel; and

(2) Numerous harmless errors combined to constitute cumulative error.

(*Id.* at PageID 103). Petitioner supported his state post-conviction petition with his own affidavit (*id.* at PageID 109–10), and an affidavit from an outside defense attorney John Kaspar to explain how Petitioner's trial counsel was allegedly ineffective (*id.* at PageID 111–12). The State

responded and moved for summary judgment (*id.* at Ex. 14, PageID 113–25), and Petitioner replied (*id.* at Ex. 15, PageID 126–29).

On July 17, 2017, the state trial court dismissed the petition without granting an evidentiary hearing. (*Id.* at Ex. 16, PageID 130–35). The trial court found that "most of the claimed errors were either before the Appellate Court or could have been raised in that venue." (*Id.* at PageID 135). The trial court also agreed with the state appellate court's reasoning on direct appeal: "This case, just like many other cases involving minor victims of sexual abuse, was based primarily on whether the jury found N.J. or [Petitioner] to be credible. The jury chose to believe N.J.'s testimony." (*Id.* (quoting *id.* at Ex. 12, PageID 98)).

On November 14, 2017, Petitioner, without the assistance of counsel, appealed that decision to the state appellate court, raising the following three assignments of error:

1. Appellant was denied his constitutional rights to Due Process comporting with the Fourteenth Amendment when the trial court judge abused his discretion and dismissed the petition for post conviction relief;

2. Appellant was denied his Fourteenth Amendment constitutional Due Process rights when his trial court judge did not recuse himself from the post conviction proceedings after ineffective assistance of counsel claims were raised again[st] the trial attorney he had recommended; and

3. Appellant was denied his constitutional right to effective assistance of appellant counsel comporting with the Sixth and Fourteenth Amendment.

(*Id.* at Ex. 18, PageID 144–64). Petitioner supported his appeal with letters from different attorneys (*id.* at PageID 171–73, 178); affidavits from his wife Jeaneen Casey (*id.* at PageID 174), and his stepdaughter Star Burns (*id.* at PageID 175); and his own new affidavit (*id.* at PageID 176–77). The State filed a responsive brief (*id.* at Ex. 19, PageID 179–91), and Petitioner replied (*id.* at Ex. 20, PageID 192–96).

On May 29, 2018, the state appellate court overruled all three assignments of error and affirmed the trial court's decision to dismiss the post-conviction petition.  (*Id.* at Ex. 21, PageID 197–216).  The state appellate court declined to consider the letters and affidavits because Petitioner failed to submit the exhibits with his petition at the trial court level.  (*Id.* at PageID 202 n.1 (quoting Ohio App. R. 9(A)(1); *State v. Garr*, Case No. CA2009-01-014, 2009-Ohio-6241, ¶ 23 (Ohio Ct. App. 2009))).  From review of the record, it does not appear that Petitioner appealed this decision to the Ohio Supreme Court.

### E.  Motion for New Trial and Related Proceedings

Beginning in December 2021, Petitioner returned to state court to file various motions and appeals that led to the instant habeas action. (*See generally* Doc. 6 at Exs. 25–38, PageID 256–342).

### 1.  *Motion for a New Trial*

On December 9, 2021, Petitioner filed a motion for a new trial in the state trial court under Ohio Criminal Rules 33(A)(2) and (B). (Doc. 6 at Ex. 25, PageID 256–62).  Petitioner raised the following claim to support his motion:

> [Petitioner] submits that he was denied Due Process and Equal Protection of the law under the 1st, 5th, and 14th Amendments to the United States Constitutions when the prosecutor knowingly used false testimony against him in order to gain convictions in this case.

(*Id.* at PageID 257).  Petitioner framed his memorandum in support as a prosecutorial misconduct claim for knowingly allowing the alleged victim to provide false testimony.  (*Id.* at PageID 258–61).  Because the prosecution offered false testimony, Petitioner claimed he was denied Equal Protection and Due Process.  (*Id.* at PageID 262).  Petitioner "discovered through a new witness that the alleged victim was paid by a family member or members to make false allegations against"

him. (*Id.* at PageID 261). Petitioner also alleged that this witness was threatened by the victim's family not to testify. (*Id.*).

Petitioner submitted his own affidavit as support for his motion for a new trial, noting that a phone call recording existed of the new witness stating that the "only reason he did not testify" was due to being threatened by the victim's family. (*Id.* at PageID 263). The State responded on January 31, 2022, opposing Petitioner's motion. (Doc. 6 at Ex. 26, PageID 265–68). On February 7, 2022, before Petitioner replied, the state trial court denied Petitioner's motion without an evidentiary hearing. (Doc. 6 at Ex. 27, PageID 269–72). The trial court noted that "[m]uch of his argument for a new trial is a rehashing of arguments previously rejected by both this court" and the state appellate court. (*Id.* at PageID 272). As to the alleged new witness, the trial court acknowledged that Petitioner claimed a recording existed to support his motion, but also pointed out the following:

> Significantly, [Petitioner] does not name the alleged witness; does not identify the alleged parties threatening the alleged witness; does not identify what the "false allegations" the alleged witness made and to whom; and, does not even proffer what facts the alleged witness would have presented to change the jury's verdicts had the witness been called to the stand.

(*Id.*).

### 2. *Motion for Relief from Judgment*

On February 24, 2022, Petitioner filed a motion for relief from judgment in the state trial court under Ohio Civil Rule 60(B)(2) and (5). (Doc. 6 at Ex. 28, PageID 273–76). Petitioner claimed that the trial court "committed plain and prejudicial error" in dismissing his motion for a new trial when the trial court made a decision without providing him an opportunity to reply to the State's opposition. (*Id.* at PageID 274). Petitioner noted that failing to provide the "documented proof" when filing his motion for a new trial was an "inadvertent failure" because he did not

receive the "e-mails" in time.  (*Id.* at PageID 275).  On February 28, 2022, the state trial court denied Petitioner's motion for relief from judgment.  (*Id.* at Ex. 29, PageID 277).

3.     *Appeal for Denial of Motion for Relief from Judgment*

Petitioner filed a Notice of Appeal with the state appellate court on March 15, 2022.  (Doc. 6 at Ex. 30, PageID 278–79).  In the Notice, Petitioner maintained that he was appealing the state trial court's judgment from February 28, 2022, without naming the specific denial he was appealing.  (*Id.* at PageID 279).  On April 8, 2022, Petitioner filed his appellate brief.  (*Id.* at Ex. 31, PageID 287–95).  Petitioner raised the following assignment of error: "The lower court committed prejudicial error in ignoring the guarantee of equal protection."  (*Id.* at PageID 288).  In Petitioner's "Statement of the Case and Facts," he noted the state trial court denied his motion for a new trial on February 28, 2022.[3]  (*Id.* at PageID 289).  To support his appeal, Petitioner attached an affidavit from his sister, Libby Patrick.  (*Id.* at PageID 293).  Petitioner also attached the affidavits from his stepdaughter, Star Burns, and his wife, Jeaneen Casey, which Petitioner submitted to the state appellate court when appealing the denial of his post-conviction action in 2017.  (*Compare id.* at PageID 294–95, *with* Doc. 6 at Ex. 18, PageID 174–75).  Based on the state appellate court's decision, Petitioner appears to have submitted these three affidavits to the state trial court with his motion for relief from judgment (Doc. 6 at Ex. 33, PageID 306), though the appendix for that motion is not included in the record (*see id.* at Ex. 28, PageID 273–76).  The State filed a merit brief, opposing Petitioner's motion. (*Id.* at Ex. 32, PageID 296–301).

---

[3] The Undersigned notes that the state trial court denied Petitioner's *motion for relief from judgment* on February 28, 2022.  (Doc. 6 at Ex. 29, PageID 277).  The state trial court denied Petitioner's motion for a new trial on February 7, 2022.  (*Id.* at Ex. 27, PageID 269–72).  The state appellate court pointed out the same in considering Petitioner's most recent appeal.  (*Id.* at Ex. 33, PageID 307 ("The notice of appeal references the trial court's February 28, 2022, Decision and Judgment, which denied the Civ.R. 60(B) motion, as the order from which the appeal is taken.")).  This timing issue is addressed in further detail below.

9

On September 6, 2022, the state appellate court affirmed the state trial court's decision to deny Petitioner's motion for relief from judgment.  (*Id.* at Ex. 33, PageID 302–11).  The appellate court reasoned:

> The crux of Casey's argument is that he would not have been convicted but for the victim's false testimony and therefore is entitled to a new trial. However, in his motion and the attached affidavit, he presented no evidence to support this claim beyond unsubstantiated hearsay. As such, the trial court properly denied the motion for a new trial. * * * Since there is no error in the underlying proceedings and Casey is not entitled to any relief, we find the trial court did not err by denying the motion for relief from judgment under Civ.R. 60(B). . . . Casey ought to have appealed the trial court's Decision and Judgment of February 7, 2022, rather than bring a Civ.R. 60(B) motion and appeal its subsequent denial. * * * While disposing of a pro se petition on procedural grounds may appear harsh, it is well-settled precedent of this court that "[a] pro se appellant is held to the same obligations and standards set forth in the appellate rules that apply to all litigants."

(*Id.* at PageID 308–09 (citations omitted)).  The court then addressed why the "result would be the same" if reviewing Petitioner's claim on the merits, including the fact that Petitioner "pursued an improper collateral attack on the judgment via Civ.R. 60(B)."  (*Id.* at PageID 309–11).  The state appellate court acknowledged that although Petitioner asserted he was denied equal protection, "his argument is addressed exclusively to the denial of his motion for a new trial and makes no argument as to how he was denied equal protection of the law."  (*Id.* at PageID 307 n.1).  The court declined to "speculate as to the particulars of Casey's equal protection claim or otherwise address it."  (*Id.* (quoting Ohio App.R. 12(A)(2))).  The court also acknowledged that Petitioner's complaint was reasonable about not having an opportunity to reply to the State's response in the state trial court, but that the point was moot.  (*Id.* at PageID 310 (citations omitted) (noting that local rules established the filing deadlines but were not "substantive principles of law")).

### 4. *Application for Reconsideration to State Appellate Court*

On September 16, 2022, Petitioner, without the assistance of counsel, filed an application for reconsideration with the state appellate court.  (Doc. 6 at Ex. 34, PageID 312–14).  Petitioner

10

claimed that the state appellate court committed an "obvious error" because he was not appealing the denial of his motion for relief from judgment but was appealing the denial of his motion for a new trial. (*Id.* at PageID 312). Petitioner also asserted that the affidavits he submitted were "based on first-hand personal knowledge and are not 'unsubstantiated hearsay.'" (*Id.* at PageID 313).

On October 14, 2022, the state appellate court denied Petitioner's application for reconsideration. (*Id.* at Ex. 35, PageID 315–18). As for Petitioner's argument that he had intended to appeal the denial of his motion for a new trial, the state appellate court noted the following:

> If appellant intended to appeal the trial court's February 7, 2022 decision denying his motion for a new trial, an appeal from that decision needed to be filed within 30 days or on or before March 9, 2022. Appellant's notice of appeal was filed on March 15, 2022, and indicated that appellant was appealing the trial court's February 28, 2022 decision denying the motion for Civ.R. 60(B) relief. The notice of appeal was not timely filed with respect to the denial of appellant's motion for a new trial. This court addressed the denial of the motion for Civ.R. 60(B) relief, the only decision it had jurisdiction to address and the only decision referenced in the notice of appeal.

(*Id.* at PageID 317). The state appellate court determined that Petitioner failed to show an obvious error in the prior decision and failed to highlight an issue that was not already "fully considered" by the court. (*Id.* at PageID 318).

### 5. *Appeal to Supreme Court of Ohio*

On November 16, 2022, Petitioner, without the assistance of counsel, filed a Notice of Appeal (Doc. 6 at Ex. 36, PageID 319–21), and submitted a memorandum in support of jurisdiction to the Ohio Supreme Court (*id.* at Ex. 37, PageID 322–27). Petitioner raised the following proposition of law: "The lower courts committed prejudicial error in ignoring the protections of the Constitution." (*Id.* at PageID 323). Petitioner framed his claim as a due process violation (*id.* at PageID 324, 326), pointing out that the Ohio Constitution can provide broader protections than

11

the United States Constitution (*id.* at PageID 326 (citations omitted)).  The Ohio Supreme Court declined to accept jurisdiction on January 31, 2023.  (*Id.* at Ex. 38, PageID 342).

### F.    Federal Habeas Corpus

Petitioner, without the assistance of counsel, filed the instant Petition for a writ of habeas corpus, which was received by the Court on April 17, 2023.  (Doc. 1).  Petitioner submitted the following ground for relief:

> **GROUND ONE**: Equal Protection
>
> **Supporting Facts**: Despite the evidence of factual innocence the lower courts ignored the newly discovered evidence and departed from the legislative mandates and treated Petition[er] disparately[.]

(*Id.* at PageID 6).

Respondent filed a Return of Writ (Doc. 7), and the state court record (Doc. 6); and Petitioner filed a Traverse.  (Doc. 8).  Additionally, pursuant to this Court's February 20, 2024, Order (Doc. 12), Respondent filed the trial transcripts (Doc. 13).

## II.    STANDARDS OF REVIEW

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  This statutory authority and the jurisprudence of procedural default guide the Court's review of this Petition.

### A.    AEDPA

The United States Supreme Court has described AEDPA as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction[n]' for which federal habeas relief is the remedy."  *Burt v.*

*Titlow*, 571 U.S. 12, 19–20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011));

*Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a 'highly deferential standard for

evaluating state-court rulings'" and "demands that state-court decisions be given the benefit of the

doubt." (citations and footnote omitted)).  "This standard in § 2254(d) is difficult to meet, as

intended." *Davis v. Jenkins*, 115 F.4th 545, 553 (6th Cir. 2024) (citing *Harrington*, 562 U.S. at

102); *Haight v. Jordan*, 59 F.4th 817, 831 (6th Cir. 2023) (noting that AEDPA is a "purposely

demanding standard," and state courts are "given the benefit of the doubt" (citations omitted)).

AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a

federal court from granting habeas relief for a "claim that was adjudicated on the merits in State

court proceedings" unless the state-court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Court of Appeals for the Sixth Circuit has explained the meaning of the

standards found in § 2254(d)(1):

> Under the "contrary to" clause, a federal habeas court may grant the writ "if the
> state court applies a rule different from the governing law set forth in our cases, or
> if it decides a case differently than we have done on a set of materially
> indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L.
> Ed. 2d 914 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S. Ct.
> 1495, 146 L. Ed. 2d 389 (2000)). Under the "unreasonable application" clause, a
> federal habeas court may grant the writ if the state court identifies the correct
> governing legal principle from the Supreme Court's decisions but unreasonably
> applies the law or bases its decision on an unreasonable determination of the facts,
> in light of the record before the state court. *Harrington v. Richter*, 562 U.S. 86, 100,
> 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *Williams*, 529 U.S. at 412-13.

*Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018).

Moreover, under § 2254(d)(2), a "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citing *Williams v. Taylor*, 529 U.S. 362, 411 (2000) (O'Connor, J., concurring)).  Instead, a state court's factual findings are "only unreasonable where they are 'rebutted by clear and convincing evidence' and do not have support in the record." *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).  And "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]"  *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

The burden of satisfying AEDPA's standards rests with the petitioner.  *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Further, a federal habeas court's review is limited to "the record before the state court."  *Id.* at 182.

## B.    Procedural Default and Fair Presentment

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to first present those claims to the state courts for consideration.  28 U.S.C. § 2254(b), (c).  If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies.  *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)).  Where a petitioner has failed to exhaust claims but would find

14

those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Fair presentment has come to describe a situation where a person convicted of a crime in a state court fails to properly present a particular claim to the highest court of the state so that the state has a fair chance to correct any errors made in the course of the trial or the appeal, before a federal court intervenes in the state criminal process. A petitioner is required to "fairly present" his claims to the state courts. *Whitman v. Gray*, 103 F.4th 1235, 1238 (6th Cir. 2024) (quoting *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009)). This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)); *Whitman*, 103 F.4th at 1238 (citing *Wagner*, 581 F.3d at 414–15) ("To satisfy the presentation requirement, the petitioner must have argued the claim's factual and legal basis at each level of the state court system."). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. This aspect means that if the claims are not presented to the state courts in the way state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court. As the Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were *not* resolved on the merits in the state proceeding due to [the] failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case — that is, they are "procedurally defaulted."

Additionally, a petitioner must comply with a state's procedural rules to warrant federal habeas review. *Jones v. Bradshaw*, 46 F.4th 459, 484 (6th Cir. 2022) (quoting *Coleman*, 501 U.S.

at 729-30).  "A common example of a procedural default is a failure to raise a claim in state court in a timely manner." *Gibbs v. Huss*, 12 F.4th 544, 550 (6th Cir. 2021).  To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test.  *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *McNeill v. Bagley*, 10 F.4th 588, 595 (6th Cir. 2021) (citing the four-part *Maupin* standard).  First, the reviewing court "must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Jones*, 46 F.4th at 484 (quoting *Maupin*, 785 F.2d at 138).  "Second, the court must decide whether the state courts actually enforced the state procedural sanction." *Id.*  Third, the court must determine whether the forfeiture is an "adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim." *Id.* (internal quotation marks omitted).

If the court determines that a state procedural rule was not complied with and the rule was an adequate and independent state ground, then the petitioner may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause for the procedural default and actual prejudice resulting from the alleged violation of federal law, or (2) that failure to review the claims "will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 748–51 (citations omitted); *Maupin*, 785 F.2d at 138. To establish cause, a petitioner must show that "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Rogers v. Mays*, 69 F.4th 381, 395 (6th Cir. 2023) (quoting *Shinn v. Ramirez*, 596 U.S. 366, 379 (2022)). The petitioner bears the burden of showing cause and prejudice. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citations omitted).

To establish a fundamental miscarriage of justice, a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *Murray*, 477 U.S. at 496); *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citation omitted).  This requires a petitioner to "present new reliable evidence showing that he is actually innocent." *Dufresne v. Palmer*, 876 F.3d 248, 256 (6th Cir. 2017) (citing *Schlup*, 513 U.S. at 321, 324).  "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Gibbs v. United States*, 655 F.3d 473, 477 (6th Cir. 2011) (quoting *Murray*, 477 U.S. at 496); *Strouth v. Colson*, 680 F.3d 596, 608 (6th Cir. 2012).

## III.  DISCUSSION

In his sole ground for relief, Petitioner asserts that although he offered newly discovered evidence to support his factual innocence, the state courts ignored the evidence and "departed from the legislative mandates and treated Petition[er] disparately."  (Petition, Doc. 1, PageID 6; Traverse, Doc. 8, PageID 394–96).

Respondent contends that Petitioner's Equal Protection claim "fails to set forth any argument or facts explaining his allegations of the deprivation of his constitutional right to equal protection." (Return, Doc. 7, PageID 384–85).  Respondent asserts if Petitioner did "appropriately plead[]" an Equal Protection claim, then such claim is procedurally defaulted because Petitioner failed to fairly present this claim to the state courts.  (*Id.* at PageID 385 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999)).  As support, Respondent points to the state appellate court decision overruling Petitioner's appeal from the denial of his motion for relief from judgment, in which the court noted that Petitioner failed to present an Equal Protection claim.  (*Id.* at PageID

17

385 n.4 (citing *id.* at Ex. 33, PageID 307 n.2)).  Respondent asserts that Petitioner has failed to offer cause and prejudice to excuse the default. (*Id.*).

Respondent also contends that if Petitioner is challenging the guilty findings from trial, then his Petition is time-barred under AEDPA. (*Id.* at PageID 385 (citing 28 U.S.C. § 2244(d)(2))). In the alternative, Respondent asserts that if Petitioner is attempting to raise the "same issue" raised in his last state court appeal, then Respondent understands the claim as a challenge to the denial of Petitioner's Rule 60(B) motion for relief from judgment. (*Id.* at PageID 385–86). Respondent posits that the claim might be timely but is not cognizable on federal habeas review.  If Petitioner is attempting to challenge the state courts rejecting his motion for relief from judgment, Respondent maintains that a state law violation is not an allegation of federal constitutional law. (*Id.* at PageID 386–91).  Respondent also asserts that this Court cannot review a claim that an Ohio court erred or abused its discretion in denying a collateral motion because it does not attack the underlying conviction or detention. (*Id.* at PageID 387–88).  Respondent contends that this Court "must defer" to the state courts on state law issues. (*Id.* at 391 (citing *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005))).

In Reply, Petitioner notes that an Equal Protection claim requires a petitioner to show that he was treated "disparately compared to similarly situated persons and that such treatment burdens a fundamental right or has no rational basis." (Traverse, Doc. 8, PageID 394 (citing *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011))).  Petitioner contends that he "acquired favorable newly discovered evidence, post judgment," which supports his actual innocence claims. (*Id.*).  Petitioner then proceeds to challenge state court applications of Ohio procedural rules, including timely filing requirements under Ohio Criminal Rules 33(B) and 57(B).

(*Id.* at PageID 394-95). Petitioner contends that he "did not fail to comply with the State rules of procedure and denial by the lower courts had 'no rational basis.'" (*Id.* at PageID 395).

Petitioner maintains that his appeal from the denial of his motion for a new trial was timely.[4] (*Id.* (citing *State v. Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470)). Petitioner asserts that it was plain error for the state trial court to deny his motion for a new trial. (*Id.*). Petitioner contends that the state appellate court was incorrect that his Ohio Civil Rule 60(B) motion was an improper collateral attack and that the denial "runs afoul" of the statute's purpose. (*Id.*). Further, Petitioner "strongly disagrees" that his claim is not cognizable. (*Id.* at PageID 396). Petitioner also asserts that if his claim is procedurally defaulted, then his actual innocence excuses the default because the "newly discovered evidence would convince a reasonable jury of more than reasonable doubt that he committed the alleged offenses." (*Id.*).

### A.    Procedural Default and Fair Presentment

To the extent Petitioner intended to challenge the state trial court's denial of his motion for a new trial, claiming he was denied Equal Protection (*see* Traverse, Doc. 8, PageID 394–96), such claim is procedurally defaulted and also lacks fair presentment. Petitioner's main contentions appear to focus on his alleged newly discovered evidence and the state trial court denying his motion for a new trial. (*Id.*). Although Petitioner's claim is stated in terms that challenge how the Ohio courts applied Ohio statutes—which, as detailed below, is not cognizable on habeas review—Petitioner appears to base his Equal Protection claim on the state courts disregarding his alleged

---

[4] As discussed below, the timeliness issue is not whether Petitioner timely appealed the denial of his motion for relief from judgment, but whether Petitioner timely appealed the denial of his motion for a new trial. The state appellate court determined Petitioner was appealing the state trial court's February 28, 2022, denial of Petitioner's motion for relief from judgment. (Doc. 6 at Ex. 33, PageID 307). The state appellate court would not consider arguments related to the denial of his motion for a new trial because the time to appeal that denial had passed. (*Id.* (denying appeal); *id* at Ex. 35, PageID 317 (denying application for reconsideration)).

newly discovered evidence and denying his motion for a new trial.  This claim, however, is defaulted for two reasons: (1) Petitioner failed to timely appeal the denial of his motion for a new trial; and (2) Petitioner failed to fairly present his Equal Protection claim to the state courts.

### 1.    Failure to Timely Appeal Motion for a New Trial

If Petitioner seeks relief for being denied a new trial, asserting that the state trial court violated his Equal Protection rights, that claim is procedurally defaulted because Petitioner failed to timely appeal the state trial court's denial of his motion for a new trial.  *Jones v. Bradshaw*, 46 F.4th 459, 484 (6th Cir. 2022) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)); *Gibbs v. Huss*, 12 F.4th 544, 550 (6th Cir. 2021) ("A common example of a procedural default is a failure to raise a claim in state court in a timely manner.").  As noted above, the *Maupin* test for procedural default looks to whether Petitioner failed to follow a state procedural rule that the state court actually enforced, and whether the procedural rule is an adequate and independent state ground to preclude federal habeas relief.  *Jones*, 46 F.4th at 484 (quoting *Maupin*, 785 F.2d at 138; *McNeill v. Bagley*, 10 F.4th 588, 595 (6th Cir. 2021)).

As to *Maupin's* first prong, Petitioner failed to follow a state procedural rule when he did not timely appeal the state trial court's denial of his motion for a new trial.  The state trial court denied Petitioner's motion for a new trial on February 7, 2022.  (Doc. 6 at Ex. 27, PageID 269–720).  The state trial court then denied Petitioner's motion for relief from judgment on February 28, 2022.  (*Id.* at Ex. 29, PageID 277).  Petitioner submitted his relevant Notice of Appeal on March 15, 2022, noting that he was appealing the state trial court's judgment from February 28, 2022.  (*Id.* at Ex. 30, PageID 278–79).  Petitioner contends that his motion-for-a-new-trial-claim would have an alternative deadline under 28 U.S.C. § 2244(d)(1)(D) and points out that Respondent asserted Petitioner timely filed the appeal from the state trial court's February 28,

2022, judgment.  (Traverse, Doc. 8, PageID 395).  These contentions, however, do not address whether he timely filed an appeal in state court for the denial of his motion for a new trial.  As the state appellate court explained, if Petitioner "intended to appeal the trial court's February 7, 2022, decision denying his motion for a new trial, an appeal from that decision needed to be filed within 30 days or on or before March 9, 2022."  (Doc. 6 at Ex. 35, PageID 317 (denying Petitioner's application for reconsideration)).  Petitioner failed to submit an appeal on or before March 9, 2022. (*Id.* (noting the same); *id.* at Ex. 30, PageID 278–79 (Notice of Appeal filed March 15, 2022)). Petitioner therefore failed to follow a state procedural rule, the timely filing of an appeal.  *Gibbs*, 12 F.4th at 550; *Jones*, 46 F.4th at 484.

As to *Maupin's* second prong, the state appellate court actually enforced the procedural rule by declining to consider an appeal related to the motion for a new trial, instead focusing on the denial of Petitioner's motion for relief from judgment.  (Doc. 6 at Ex. 33, PageID 307).  The state appellate court determined that Petitioner's appeal related to the state trial court's denial of motion for relief from judgment under Ohio Civil Rule 60(B). (*Id.*).  In denying Petitioner's application for reconsideration, the state appellate court noted that even if Petitioner's March 15, 2022, Notice of Appeal was for the denial of his motion for a new trial, the appeal was untimely. (Doc. 6 at Ex. 35, PageID 317).  The state appellate court also pointed out that it addressed the denial of the motion for relief from judgment for Petitioner's appeal because that was the "only decision it had jurisdiction to address."  (*Id.*).  The state appellate court actually enforced the procedural rule, satisfying *Maupin's* second prong.  *Gibbs*, 12 F.4th at 550; *Jones*, 46 F.4th at 484.

As to *Maupin's* third prong, the state procedural rule requiring an appeal to be timely filed is an adequate and independent state ground to preclude federal habeas review.  *Clifford v. Shoop*, No. 1:22-cv-141, 2022 WL 17252427, at *7 (S.D. Ohio Nov. 28, 2022) (citing *Bonilla v. Hurley*,

21

370 F.3d 494, 496 (6th Cir. 2004)). A rule is adequate and independent if it serves judicial interests and is routinely enforced. *See McNeill v. Bagley*, 10 F.4th Cir. 588, 595-96 (6th Cir. 2021) (quoting *Parker v. Bagley*, 543 F.3d 859, 861 (6th Cir. 2008)) ("In order to constitute an adequate and independent state bar, a state procedural rule must be 'firmly established and regularly followed.'"). In sum, in failing to timely appeal the denial of his motion for a new trial, Petitioner's claim appears to be procedurally defaulted.

### 2. Fair Presentment

Even if Petitioner had timely appealed the denial of his motion for a new trial, he failed to fairly present the Equal Protection claim to the state courts. To fairly present a claim to a state court, a petitioner must assert both the legal and factual basis for a claim. *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)); *Whitman v. Gray*, 103 F.4th 1235, 1238 (6th Cir. 2024) (citing *Wagner v. Smith*, 581 F.3d 410, 414-15 (6th Cir. 2009)). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue - not merely as an issue arising under state law." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)). Four actions are significant to fairly presenting a federal constitutional claim: "(1) rel[ying] upon federal cases employing constitutional analysis; (2) rel[ying] upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Williams*, 460 F.3d at 806. The Sixth Circuit is clear that a petitioner need not cite "chapter and verse" of federal constitutional law, however, "general allegations" of constitutional violations do not fairly present a claim to a state court. *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006) (citing *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir.

2004)); *Hicks*, 377 F.3d at 553 (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). A petitioner is also required to fairly present the issue before both the state appellate court and Ohio Supreme Court.  *See Wagner*, 581 F.3d at 418 (citations omitted) ("For a claim to be reviewable at the federal level, each claim must be fairly presented at every stage of the state appellate process.").

Petitioner's state appellate briefs took none of the required steps to preserve an equal protection claim as a federal constitutional claim for habeas review.  *Williams*, 460 F.3d at 806. In appealing the state trial court's denial of his motion for relief from judgment, Petitioner raised the following assignment of error: "The lower court committed prejudicial error in ignoring the guarantee of equal protection."  (Doc. 6 at Ex. 31, PageID 289–91).  Petitioner then focused on Ohio case law and statutes to challenge the state trial court denials of his motion for a new trial and motion for relief from judgment.  (*Id.*).  The only two federal cases Petitioner cited were related to burden of proof and evidentiary issues at trial, not about Equal Protection claims.  (*Id.* at PageID 290–91 (citing *United States v. Fleischman*, 339 U.S. 349 (1950); *Francis v. Franklin*, 471 U.S. 307, 316 (1985))).  In Petitioner's application for reconsideration to the state appellate court, he adds that he is "not asking to be 'accorded greater rights,' but not be treated disparately as others by the same court," without pointing to any case law as support.  (*Id.* at Ex. 34, PageID 312–13). In appealing the state appellate court's decisions to the Ohio Supreme Court, Petitioner's only mention of "equal protection" was that the Ohio Constitution prohibited the "denial to any person the equal protections of the laws."  (Doc. 6 at Ex. 37, PageID 324–26).

Petitioner failed to fairly present his Equal Protection claim to both the state appellate court and the Ohio Supreme Court.  *Wagner*, 581 F.3d at 418.  The claims Petitioner raised to the state courts were mere "general allegations" of Equal Protection violations and insufficient to alert the

state courts that he was raising a federal Equal Protection claim rather than a claim challenging the manner in which the state trial court enforced state procedural rules. *Slaughter*, 450 F.3d at 236 (citing *Blackmon*, 394 F.3d at 400); *Hicks*, 377 F.3d at 553 (quoting *McMeans*, 228 F.3d at 681). Petitioner did not rely on federal cases employing constitutional analysis, rely on state cases employing a federal constitutional analysis, phrase his error in terms of constitutional law, or allege facts well within the mainstream of constitutional law. *Williams*, 460 F.3d at 806. Petitioner therefore failed to satisfy the fair presentment requirement.

As the state appellate court said in denying Petitioner's motion for relief from judgment appeal:

> Casey's assignment of error asserts a denial of equal protection. However, his argument is addressed exclusively to the denial of his motion for a new trial and makes no argument as to how he was denied equal protection of the law. Therefore, we will not speculate as to the particulars of Casey's equal protection claim or otherwise address it. "The court may disregard an assignment of error presented for review if the party raising it *** fails to argue the assignment separately in the brief, as required under App.R. 16(A)." App.R. 12(A)(2).

(Doc. 6 at Ex. 33, PageID 307 n.2). The state appellate court reiterated the same in denying Petitioner's application for reconsideration, noting that Petitioner's "equal protection argument was not supported by any arguments or citations in his brief." (*Id.* at Ex. 35, PageID 316). In short, Petitioner did not do enough to fairly present the federal issue to the state courts. *Whitman*, 103 F.4th at 1238 (citing *Wagner*, 581 F.3d at 414-15); *Williams*, 460 F.3d at 806.

Not only does Petitioner's claim appear to be procedurally defaulted for failing to timely appeal the state trial court's denial of his motion for a new trial, but Petitioner also failed to fairly present his claim in the state courts. To excuse the default, Petitioner must offer cause and prejudice or show that failing to consider the claim would result in a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *Murray v. Carrier*, 477 U.S. 478, 496

(1986)); *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citation omitted).  Petitioner does not offer any cause and prejudice, but he does maintain that he is actually innocent.  (Traverse, Doc. 8, PageID 396).

>            3.      *Actual Innocence Gateway*

A petitioner can excuse procedural default to correct a fundamental miscarriage of justice through a "colorable claim of factual innocence."  *Sheffield v. Burt*, 731 F. App'x 438, 443 (6th Cir. 2018) (citing *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)); *Murray*, 477 U.S. at 495–96. The actual innocence gateway is a high bar that "permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327).  The "innocence gateway is a narrow one" and "should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Davis v. Bradshaw*, 900 F.3d 315, 326 (6th Cir. 2018) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 401 (2013)).  A "petitioner may not [overcome a default] by simply undermining the state's case," and instead "must demonstrate that he *factually* did not commit the crime."  *Hubbard v. Rewerts*, 98 F.4th 736, 743 (6th Cir. 2024).

To show actual innocence, a petitioner must present new, reliable evidence that establishes "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  *House*, 547 U.S. at 536–37 (quoting *Schlup*, 513 U.S. at 327); *Hubbard*, 98 F.4th at 741.  The actual innocence gateway requires presentation of "new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial."  *Bell v. Howes*, 703 F.3d 848, 855 (6th Cir. 2012) (quoting *Schlup*, 513 U.S. at 321–24); *Hubbard*, 98 F.4th at 743.  A habeas court may "consider

how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of [new] evidence." *Davis*, 900 F.3d at 326 (quoting *House*, 547 U.S. at 537); *Schlup*, 513 U.S. at 332. An "[u]nexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." *McQuiggin*, 569 U.S. at 399. Further, this Court "must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *Davis*, 900 F.3d at 326 (quoting *House*, 547 U.S. at 537–38); *Schlup*, 513 U.S. at 327–28. "The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *House*, 547 U.S. at 538 (citing *Schlup*, 513 U.S. at 329).

Petitioner failed to submit any affidavits with his Petition (Doc. 1), or his Traverse (Doc. 8). In his motion for an evidentiary hearing, however, he points to three affidavits in the state court record as newly discovered evidence to support his gateway claim of actual innocence. (Doc. 9, PageID 397 (citing Doc. 6 at Ex. 31, PageID 293–95 (Affidavits from Libby Patrick, Star Burns, and Jeaneen Casey))). Appealing the denial of his motion for relief from judgment to the state appellate court, Petitioner posited that the "attached affidavits will concur the conspiracy committed to remove Appellant from the familial equation at any cost." (Doc. 6 at Ex. 31, PageID 290). The conspiracy or "non-fictional narrative," Petitioner suggested, "centers around the dysfunctional aspects of ex-husbands and biological fathers who resent being displaced and will do anything to rekindle their role as husband and father." (*Id.* at PageID 291). Petitioner supported his appeal with the affidavits from his sister Libby Patrick, his stepdaughter Star Burns, and his wife Jeaneen Casey. (*Id.* at PageID 293–95).

26

a.    *New Evidence*

As noted above, evidence is considered "new" if it was not presented at trial.  *Bell*, 703

F.3d at 855 (quoting *Schlup*, 513 U.S. at 321-24); *Hubbard*, 98 F.4th at 743.  Petitioner submits

an affidavit from his sister, Libby Patrick.  (Doc. 6 at Ex. 31, PageID 293).  Ms. Patrick states that

around November 20, 2017, a family member, Casey Jones, told Ms. Patrick that the victim

confessed to setting up Petitioner.  (*Id.*).  Ms. Patrick also states that on September 13, 2020, she

received a Facebook message from a person named Marshall Chapman, whom she had never met

before.  (*Id.*).  Patrick provides the following information:

> [Chapman] stated in the message that it had been confessed to him and Jeaneen
> (Larry's wife) that Larry had been set up. He stated in the message that Natasha
> Jameson's uncle on her dads' side told him 'Don't mess with us because we sure
> know how to get rid of them white boy'. He said that Natasha's father and her uncle
> paid Natasha money and a cell phone if she would lie and help get rid of Larry. He
> said in the message that they threatened him. He went on to say in the message that
> if he could get Natasha immunity, she would tell the truth about Larry."

(*Id.*).  Supported by the fact that the stated dates of receiving this information occurred after trial

(*id.*), this evidence is "new" because testimony from Ms. Patrick was not presented at trial, nor did

Casey Jones or Marshall Chapman testify at trial (*see* Doc. 13-1, PageID 412, 682–85, 1016

(witness lists)).

Petitioner also submits an affidavit from his stepdaughter, Star Burns.  (Doc. 6 at Ex. 31,

PageID 294).  Ms. Burns states that (1) the victim told Burns she "wanted to get [Petitioner] in

trouble" and (2) Burns heard the victim's father, Larry Jamason, that "he wanted to get [Petitioner]

away from my mom." (*Id.*).  Burns also states that Petitioner's trial counsel never interviewed her

before trial.  (*Id.*).  Although similar testimony was presented at trial about the victim wanting to

get Petitioner in trouble and the victim's father wanting to get Petitioner away from the victim's

mother, discussed in more detail below, this information could be "new" because evidence that

Ms. Burns heard these facts herself was not presented at trial.  (*See* Doc. 13-1, PageID 412, 682–85, 1016 (witness lists)).

The final affidavit Petitioner submits is from his wife, Jeaneen Casey.  (Doc. 6 at Ex. 31, PageID 295).  Ms. Casey states that she was not interviewed by Petitioner's trial counsel prior to testifying and that she was in shock and not able to answer questions properly.  (*Id.*).  Many of the facts sworn to in the affidavit, however, were presented at trial.  For example, Ms. Casey states that she had to call an Amber Alert against Larry Jamason, her ex-husband and the victim's father, for taking her daughters.  (*Id.*).  Larry Jamason testified about the Amber Alert at trial.  (Doc. 13-1, PageID 827).  In her affidavit, Ms. Casey also reiterates that Larry Jamason was in her bed, which she testified about during Petitioner's trial.  (*Compare* Doc. 6 at Ex. 31, PageID 295, *with* Doc. 13-1, PageID 1046).  Ms. Casey states that she has "personal knowledge" that her daughters and Larry Jamason discussed how to get rid of Petitioner so Jamason could get back together with Ms. Casey.  (Doc. 6 at Ex. 31, PageID 295).  The Court is not persuaded that Ms. Casey's affidavit sufficiently constitutes "new" evidence.  Regardless, even if considered "new" evidence, Ms. Casey's affidavit is not reliable.

### b.    Reliability

In assessing the reliability of the affidavits, the Court looks to the likely credibility of each affiant.  *Davis*, 900 F.3d at 326 (quoting *House*, 547 U.S. at 537); *Schlup*, 513 U.S. at 332.  The Court may also consider when Petitioner submitted the affidavits, including any unexplained delays.  *Davis*, 900 F.3d at 326; *McQuiggin*, 569 U.S. at 399.

Looking to the timing of submitting Ms. Patrick's affidavit, Petitioner did not include the affidavit with his motion for a new trial.  (*See id.* at Ex. 25, PageID 256).  Instead, Ms. Patrick's affidavit was signed and notarized on February 7, 2022 (*id.* at Ex. 31, PageID 293), the same day

the state trial court denied Petitioner's motion for a new trial (*id.* at Ex. 27, PageID 269).  It is unclear why information received in 2017 and 2020 was not included with Petitioner's motion for a new trial filed on December 9, 2021.  In considering the Petitioner's appeal of the denial of his motion for relief from judgment, the state appellate court pointed out that Petitioner initiated the motion for a new trial, "controlled the timeline" of proceedings, and "should have waited before filing the initial motion for a new trial."  (Doc. 6 at Ex. 33, PageID 310).  Petitioner provided no reasoning for the delay in submitting Ms. Patrick's affidavit.

Further, Ms. Patrick states she never met Marshall Chapman before receiving the message. (Doc. 6 at Ex. 31, PageID 293).  Based on the affidavits, the Court points out that Chapman signed as a witness for Ms. Burns's affidavit and was with Jeaneen Casey when the victim allegedly confessed, so it appears that Chapman's identity has been known at least by Petitioner for some time.

Relevant in considering the reliability of Ms. Patrick's affidavit, on December 9, 2021, Petitioner filed a motion for a new trial with the state trial court.  (Doc. 6 at Ex. 25, PageID 256). With his motion, Petitioner submitted his own affidavit, stating that a phone call recording existed of a witness who "explained to [Petitioner] that the only reason he did not testify in my case was because he had been threatened by the all[eged] victim family."  (*Id.* at PageID 263).  Petitioner also stated he was attempting to "obtain a copy of said phone recording through a court order" as support for his actual innocence.  (*Id.*).  The state trial court pointed out the following in addressing Petitioner's motion:

> Significantly, defendant does not name the alleged witness; does not identify the alleged parties threatening the alleged witness; does not identify what the "false allegations" the alleged witness made and to whom; and, does not even proffer what facts the alleged witness would have presented to change the jury's verdicts had the witness been called to the stand.

29

(*Id.* at Ex. 27, PageID 272).  The state appellate court later explained that since Petitioner was convicted in January 2016, and was the "one who brought the motion for a new trial and therefore the one who initiated and controlled the timeline of the current proceedings," then "[i]f he did not have the required documentation, he should have waited before filing the initial motion for a new trial." (Doc. 6 at Ex. 33, PageID 310).

Ms. Patrick's affidavit was not submitted until after the state trial court's denial, at which time she included information that the state trial court pointed out was missing. (*Id.* at Ex. 31, PageID 293).  Petitioner first claimed he had phone call recordings with someone who stated he was threatened by the victim's family as support for Petitioner's gateway claim of actual innocence. (*Id.* at Ex. 25, PageID 263).  In Ms. Patrick's affidavit, however, Patrick claims she received Facebook messages from Marshall Chapman about being threatened by the victim's father.[5]  Moreover, the affidavit was written by a close family member, Petitioner's sister, who has an incentive in helping her brother. *Chamblin v. Warden, Chillicothe Corr. Inst.*, No. 1:15-cv-545, 2016 U.S. Dist. LEXIS 114362, at *33-34 (S.D. Ohio June 24, 2016) (collecting cases).  Given these circumstances, particularly the timing of the submission, Ms. Patrick's affidavit is not reliable.  *Davis*, 900 F.3d at 326 (quoting *House*, 547 U.S. at 537); *Schlup*, 513 U.S. at 332; *McQuiggin*, 569 U.S. at 399.

Ms. Burns's affidavit is also not reliable.  Ms. Burn's affidavit is not notarized or dated. (Doc. 6 at Ex. 31, PageID 294).  The witnesses to the affidavit were Jeaneen Casey, Burns's mother and Petitioner's wife; and Marshall Chapman, the alleged stranger who was mentioned as a source in Ms. Patrick's affidavit.  (*Id.* at PageID 293–94).  In considering the timing of submitting Ms. Burns affidavit, Petitioner waited until his state post-conviction appeal to submit this affidavit

---

[5] From review of the record, it appears that the alleged phone call recordings, emails, or Facebook messages were never submitted to the state courts.  (*See generally* Doc. 6).

instead of with his post-conviction petition in the state trial court. (*Id.* at Ex. 18, PageID 175). The state appellate court addressed Ms. Burns's affidavit in denying Petitioner's post-conviction appeal, noting that the letters and affidavits Petitioner submitted with that appeal were not submitted to the state trial court with his post-conviction petition. (Doc. 6 at Ex. 21, PageID 202 n.1). The state appellate court declined to consider the documents because they were not properly before the court. (*Id.*). Petitioner did not explain the delay in submitting Ms. Burns's affidavit and did not challenge the state appellate court's decision to not consider the affidavit. Because of the unexplained delay in submitting this affidavit and the failure to notarize it, the affidavit cannot be deemed sufficiently reliable. *Davis*, 900 F.3d at 326 (quoting *House*, 547 U.S. at 537); *Schlup*, 513 U.S. at 332; *McQuiggin*, 569 U.S. at 399.

Not only is the Court is not persuaded that Ms. Casey's affidavit contains "new" evidence, but also that Ms. Casey's affidavit is not reliable. As with Ms. Burns's affidavit, Petitioner did not submit Ms. Casey's affidavit until Petitioner's appeal of the denial of his post-conviction petition (*id.* at Ex. 18, PageID 174); and the state appellate court declined to consider the affidavit (*id.* at Ex. 21, PageID 202 n.1). Petitioner has not explained the delay in submitting Ms. Casey's affidavit. Further, Ms. Casey is Petitioner's wife, and has an incentive in helping Petitioner. *Chamblin*, 2016 U.S. Dist. LEXIS 114362, at *33-34 (collecting cases). Ms. Casey's affidavit is not sufficiently reliable. *Davis*, 900 F.3d at 326 (quoting *House*, 547 U.S. at 537); *Schlup*, 513 U.S. at 332; *McQuiggin*, 569 U.S. at 399.

### c.    Reasonable Probability

Because the Court has determined that the affidavits are not reliable, Petitioner has failed to show that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House*, 547 U.S. at 536-37 (quoting *Schlup*, 513 U.S. at 327);

*Hubbard*, 98 F.4th at 741.  As explained above, this court "must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial," assessing the likely impact on reasonable jurors.  *House*, 547 U.S. at 537-38 (quoting *Schlup*, 513 U.S. at 327-29)) (internal quotation marks omitted).

Because the affidavits are not reliable and the trial came down to the credibility of witnesses, the Undersigned is not persuaded that no reasonable juror would have found Petitioner guilty.  Testimony was presented at trial about the possibility of a prior conspiracy between Petitioner's stepdaughter, Mary, and her father, Larry Jamason, to accuse Petitioner of similar acts to draw a parallel to N.J.'s current allegations.  (Doc. 13-1, PageID 1111–12).  Testimony revealed that Petitioner originally tried to frame his stepdaughter Mary's accusations as a conspiracy— accusations that turned out to be true.  (*Id.* at PageID 958–59 (detailing testimony by police officer, Lieutenant Casey Gray); *id.* at PageID 1055 (detailing testimony from Jeaneen Casey about the alleged conspiracy between Mary and Larry Jamason)).  Moreover, both parties relied on this theory in making remarks to the jury.  Defense counsel alleged in opening arguments that N.J. was unhappy with her home situation and her father wanted out of paying child support, so they concocted a story and the victim lied to get Petitioner in trouble.  (*Id.* at PageID 612, 614–17, 620– 21).  During closing arguments, the State argued that Petitioner repeated the same sexual acts with the same type of victim, his stepdaughter.  (*Id.* at PageID 1163–64).  In doing so, the State argued that Petitioner "used the same tired excuse" that the victim was lying, and it was "all a conspiracy with her father."  (*Id.* at PageID 1164).  Reasonable jurors found Petitioner guilty even with being presented information about a potential conspiracy.

Presenting additional information about a potential conspiracy between the victim and her father would still come down to the jury making a credibility determination.  Testimony was elicited that Petitioner "lies to people when it suits [his] purposes" about having sex with his stepdaughter Mary.  (*Id.* at PageID 1118–19).  Petitioner testified that he should be believed that he didn't have sex with N.J.  (*Id.* at PageID 1119–20).  Even so, the jury still found Petitioner guilty.  As the state courts pointed out, this case, "just like many other cases involving minor victims of sexual abuse, was based primarily on whether the jury found N.J. or [Petitioner] to be credible. The jury chose to believe N.J.'s testimony."  (Doc. 6 at Ex. 16, PageID 135 (quoting *id.* at Ex. 12, PageID 98)).  Had additional information about a conspiracy been presented, it is not more likely than not that no reasonable juror would convict Petitioner.  The jury heard that Ms. Casey did not believe her daughter Mary's prior accusations, which turned out to be true, and that Ms. Casey did not believe N.J.'s accusations now.  (Doc. 13-1, PageID 1049–50, 1056–57).  The jury already made a credibility determination between Petitioner, Ms. Casey, and the victim, choosing to believe the victim.

Assessing the likely impact on the jury about the information provided by Ms. Patrick and Ms. Burns would also come down to a credibility determination.  Ms. Patrick provided information about Marshall Chapman allegedly being threatened by Larry Jamason and the victim's uncle to not testify at trial.  (Doc. 6 at Ex. 31, PageID 293).  As discussed above, however, this information was not reliable, given the timing of Petitioner submitting the affidavit.  It is also unclear why Marshall Chapman could sign the affidavit from Petitioner's stepdaughter (Star Burns) and reach out to Petitioner's sister (Libby Patrick) yet fail to provide his own affidavit detailing the alleged threats.  This reliability issue weighs against having an impact on the jury.

Additionally, Ms. Patrick and Ms. Burns both stated that the victim recanted the accusations against Petitioner. (Doc. 6 at Ex. 31, PageID 293–94). However, recantations in child sexual abuse cases involving family members are viewed with skepticism. *Chamblin v. Warden, Chillicothe Corr. Inst.*, No. 1:15-cv-545, 2016 U.S. Dist. LEXIS 114362, at *36-38 (S.D. Ohio June 24, 2016) (collecting cases). Further, Ms. Patrick did not hear the victim recant firsthand, but instead heard the information from a different family member. (Doc. 6 at Ex. 31, PageID 293). The Undersigned points out that the victim herself did not submit an affidavit recanting the allegations, rather Petitioner submitted affidavits from third parties alleging that the victim recanted. Although a habeas court must consider all the evidence, regardless of admissibility, the credibility of the affidavits weighs on the potential jury impact. *House*, 547 U.S. at 537–38 (quoting *Schlup*, 513 U.S. at 327–29). Petitioner has not shown that Ms. Patrick's and Ms. Burns's affidavits would have such an impact to sway the jury's verdict. The affidavits are not sufficiently reliable to show that had this evidence been presented, no reasonable juror would have convicted Petitioner beyond a reasonable doubt. The affidavits do not satisfy the high bar required to clear the actual innocence gateway. *Id.* at 538.

For these reasons, Petitioner has failed to produce new reliable evidence that if presented at trial no reasonable juror would have convicted Petitioner. Petitioner has thus failed to establish his actual innocence to excuse the procedural default or the failure to fairly present his Equal Protection claim. Accordingly, the Undersigned **RECOMMENDS** Petitioner's sole ground for relief be **DENIED** and his Petition be **DISMISSED with prejudice.**

**B.      Non-cognizable Claims**

Although it appears Petitioner is attempting to raise a (procedurally defaulted) Equal Protection claim based on the state trial court denying his motion for a new trial, the Undersigned finds it prudent to address other potential claims out of an abundance of caution.

*1.      Prejudicial Error for Denying Motion for a New Trial*

To the extent Petitioner attempts to challenge the state trial court's interpretation and application of Ohio Criminal Rule 33 in denying his motion for a new trial, such a claim is not cognizable in federal habeas review.  Petitioner challenges how the state courts applied Ohio statutes and "departed from the legislative mandates."  (Petition, Doc. 1, PageID 6; Traverse, Doc. 8, PageID 394–95).  Petitioner also contends that Ohio Criminal Rule 33(B) does not establish a deadline to file a motion for a new trial based on newly discovered evidence and that Ohio Criminal Rule 57(B) does not support a "reasonable-time filing requirement."[6]  (Doc. 8, PageID 395 (citing *State v. Bethel*, 167 Ohio St.3d, 2022-Ohio-783, 192 N.E.3d 470)).

Yet, state court decisions based on state law issues are not subject to federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007). "Federal courts are obligated to accept as valid a state court's interpretation of state law and rules of practice of that state." *Davis v. Bradshaw*, 900 F.3d 315, 325 (6th Cir. 2018) (quoting *Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003)).  A state court denial of a petitioner's motion for a new trial can be reviewed only for constitutional error. *Pudelski v. Wilson*, 576 F.3d 595, 611 (6th Cir. 2009).  If Petitioner is presenting his claim solely as a question of Ohio courts applying Ohio law, challenging the state courts' interpretations of Ohio Criminal Rules 33 and 57, then the sole

---

[6] The Court notes that the timely filing issue is not whether Petitioner timely filed his motion for a new trial, but whether Petitioner timely appealed the denial of that motion.

ground for relief should be dismissed as non-cognizable.  *Estelle*, 502 U.S. at 67–68; *Cress*, 484 F.3d at 853; *Davis*, 900 F.3d at 325; *Pudelski*, 576 F.3d at 611.

### 2. *Prejudicial Error for Denying Motion for Relief from Judgment*

To the extent Petitioner intended to raise the same claim considered by the state appellate court, challenging the state trial court's denial of his motion for relief from judgment, (*see* Traverse, Doc. 8, PageID 395), this claim is not cognizable on federal habeas review.  A claim challenging the correctness of state judicial proceedings that does not dispute the petitioner's detention itself is not cognizable.  *Brisco v. Pickaway Corr. Inst.*, No. 2:18-cv-1550, 2019 WL 1058429, at *5 (S.D. Ohio Mar. 6, 2019) (quoting *Ysreal v. Warden, Chillicothe Corr. Inst.*, No. 1:13-cv-34, 2014 WL 7185264, at *6 (S.D. Ohio Dec. 16, 2014)) (citing *Kirby v. Dutton*, 794 F.2d 245, 247–48 (6th Cir. 1986)).  A federal habeas action is not the proper means to "challenge errors or deficiencies in state post-conviction proceedings . . . because the claims address collateral matters and not the underlying conviction giving rise to [a petitioner's] incarceration."  *Brisco*, 2019 WL 1058429, at *5 (quoting *Cassano v. Bradshaw*, No. 1:03-cv-1206, 2018 WL 3455531, at *48 (N.D. Ohio July 18, 2018); *Kirby*, 794 F.2d at 247).  By asserting that the state trial court erred in denying his motion for relief from judgment, Petitioner tries to attack a state court collateral proceeding and not the underlying conviction.  Put another way, Petitioner challenges the denial of a motion that is not the cause for his conviction or confinement.  Accordingly, if Petitioner is challenging the state court decision denying his motion for relief from judgment, then the Petition should be denied as this ground for relief is not cognizable.

### 3. *Free-standing Actual Innocence Claim*

To the extent Petitioner intended to raise a free-standing actual innocence claim, notwithstanding any procedural default issues, the Sixth Circuit has "repeatedly indicated that such

claims are not cognizable on habeas." *Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020) (quoting *Cress*, 484 F.3d at 854); *Smith v. Skipper*, No. 18-1743, 2018 WL 8685469, at *4 (6th Cir. Oct. 19, 2018) (citing *Herrera v. Collins*, 506 U.S. 390, 404–05 (1993); *Hodgson v. Warren*, 622 F.3d 591, 601 (6th Cir. 2010); *Cress*, 484 F.3d at 854–55) (pointing out that the petitioner raised an actual innocence claim framed as constitutional violations, but the petitioner offered no more than factual arguments that he was actually innocent). A freestanding actual innocence claim "argues that [the petitioner] is entitled to habeas relief because newly discovered evidence shows that [the petitioner's] conviction is factually innocent." *Smith*, 962 F.3d at 206 (quoting *Herrera*, 506 U.S. at 404). "Actual innocence" is not a constitutional claim, but a gateway to have an otherwise barred constitutional claim considered on the merits. *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995); *Herrera*, 506 U.S. at 404); *Brisco*, 2019 WL 1058429, at *5. Though the Supreme Court has yet to answer whether a freestanding actual innocence claim is cognizable on habeas review, if such a claim were cognizable, the Court has noted that the burden "would necessarily be extraordinarily high." *Smith*, 962 F.3d at 207 (quoting *Herrera*, 506 U.S. at 417). If Petitioner is asserting a free-standing actual innocence claim, then his Petition should be denied as not cognizable. *Id.* at 206–07.

Thus, to the extent Petitioner intended to raise any of these claims, the Undersigned **RECOMMENDS** that Petitioner's ground for relief be **DISMISSED with prejudice** as non-cognizable.

## IV.     RECOMMENDED DISPOSITION

**ACCORDINGLY**, the Undersigned **RECOMMENDS** that this action be **DISMISSED with prejudice** as Petitioner seeks relief for a procedurally defaulted claim, and alternatively the ground for relief is not cognizable in this federal habeas proceeding.

**IT IS SO RECOMMENDED**.

Date: January 17, 2025                          /s/ Kimberly A. Jolson
                                                KIMBERLY A. JOLSON
                                                UNITED STATES MAGISTRATE JUDGE

### <u>PROCEDURE ON OBJECTIONS</u>

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. 636(B)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo and operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.